# Illinois Official Reports

## Appellate Court

---

### *Jones v. City of Calumet City*, 2017 IL App (1st) 170236

---

| | |
|---|---|
| Appellate Court Caption | THADDEUS JONES, Plaintiff-Appellant, v. THE CITY OF CALUMET CITY, an Illinois Municipal Corporation, NYOTA FIGGS, in Her Official Capacity as City Clerk for the City of Calumet City, and DAVID ORR, in His Official Capacity as the Cook County Clerk, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-17-0236 |
| Filed | December 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-COEL-22; the Hon. Margarita Kulys Hoffman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ancel Glink Diamond Bush DiCianni & Krafthefer, P.C., of Chicago (Keri-Lyn J. Krafthefer and Adam W. Lasker, of counsel), for appellant.<br><br>Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson, Ross D. Secler, and Mary Ryan Norwell, of counsel), for appellees. |

Panel JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Presiding Justice Reyes and Justice Lampkin concurred in the judgment and the opinion.

## OPINION

¶ 1 On November 8, 2016, voters in Calumet City voted in favor of a referendum providing for a term limit for the office of mayor, applicable to mayoral candidates in the upcoming April 2017 election and subsequent elections, as a result of which plaintiff, Thaddeus Jones, a mayoral candidate, became ineligible to run for mayor and his name was removed from the ballot. On November 23, 2016, plaintiff filed a complaint and "emergency motion" in the circuit court of Cook County against defendants Calumet City; Nyota Figgs, in her official capacity as city clerk for Calumet City; and David Orr, in his official capacity as Cook County clerk. Plaintiff sought (1) a declaratory judgment that the referendum was unconstitutional and (2) a temporary restraining order and permanent injunction enjoining Calumet City from implementing the results of the referendum and from taking any actions preventing him from running for mayor. On January 27, 2017, the circuit court granted summary judgment in favor of defendants, and the election was subsequently held without plaintiff's name on the ballot. The results have been certified, and the mayoral office has been filled. Plaintiff appeals the January 27, 2017, order, contending the referendum was unconstitutional, the election results should be voided, and a special election for mayor should be held with his name on the ballot. We affirm.

¶ 2 Plaintiff is a resident of Calumet City, was elected alderman of the city's 3rd Ward in 1997, and was reelected as alderman in 2001, 2005, 2009, and 2013. In 2016, plaintiff announced that he was running as a candidate of the Democratic Party for mayor of Calumet City in the February 28, 2017, primary election.

¶ 3 On June 18, 2016, petitioners Steven Grant and Calumet City Concerned Citizens sought to place on the November 2016 general election (presidential) ballot a referendum question that, if approved by the voters, would impose a three-term mayoral term limit and would disqualify the incumbent three-term mayor, Michelle Markiewicz-Qualkinbush, from running for reelection. In August 2016, the Cook County clerk determined that the petitioners' proposed referendum imposing a three-term mayoral term limit could not appear on the November 2016 ballot because there were already three referenda questions on that ballot initiated by Calumet City. The Election Code provides a so-called "Rule of Three," stating "[if] more than 3 propositions are timely initiated or certified for submission at an election with respect to a political subdivision, the first 3 validly initiated, by the filing of a petition or by the adoption of a resolution or ordinance of a political subdivision, as the case may be, shall be printed on the ballot and submitted at that election." 10 ILCS 5/28-1 (West 2012). By operation of the "Rule of Three," petitioners' additional referendum question could not be put on the November 2016 ballot, leaving the voters to consider only Calumet City's referenda questions.

¶ 4 One of the Calumet City referenda questions on the November 2016 ballot asked:

"Shall the City of Calumet City, Cook County, Illinois, adopt the following term limits for the Office of Mayor to be effective for and applicable to all persons who are candidates for Mayor being elected at the Consolidated Election to be held on April 4, 2017, and subsequent elections: Mayor—No person shall be eligible to seek election to, or hold the office of mayor where that person has held the elected office of either mayor or alderman of the City of Calumet City for four (4) or more consecutive full four (4) year terms."

¶ 5     On September 15, 2016, plaintiff (along with petitioners Steven Grant and Calumet City Concerned Citizens) filed suit in federal court, seeking injunctive relief that would (1) require that petitioners' referendum be added to the November 2016 ballot and (2) prohibit Calumet City's referendum from appearing on the November 2016 ballot. On September 22, 2016, the federal district court denied the request for a preliminary injunction. The Seventh Circuit Court of Appeals affirmed the denial. *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053 (7th Cir. 2016).

¶ 6     In the November 8, 2016, election, the Calumet City referendum passed with 65.4% of the votes in favor thereof, the effect of which allowed the three-term, incumbent Mayor Markiewicz-Qualkinbush to run for reelection, but barred plaintiff, an alderman who had served five consecutive four-year terms, from running for mayor. The Calumet City referendum also barred two other aldermen who had served at least four consecutive four-year terms, Alderman Magdalena Wosczynski and Alderman Nick Manousopoulos, from running for mayor.

¶ 7     The Calumet City Municipal Officers Electoral Board removed plaintiff's name from the mayoral ballot.

¶ 8     On November 16, 2016, plaintiff filed an emergency motion in the federal district court, seeking to enjoin the implementation of the portion of Calumet City's referendum limiting mayoral candidates to persons who had served fewer than four consecutive four-year terms as alderman. On November 22, 2016, the federal district court denied the emergency motion, stating in its oral ruling that plaintiff had brought claims based on his being a class of one in violation of the equal protection clause, but that "[t]here has to be more of a record developed about whether there is a class of one and whether or not there's an equal protection violation." The court further stated it was exercising its "discretion in allowing the voters' choice here in this referendum to go forward" and suggested that plaintiff "go to state court and try to enforce the state laws."

¶ 9     Defendants filed a motion in federal court to dismiss plaintiff's class of one and equal protection claims contained in his federal complaint. On January 12, 2017, the federal district court granted the motion to dismiss, finding that plaintiff had failed to show he was a class of one. The court also found a rational basis for the Calumet City referendum, stating in its oral ruling: "[F]rom a constitutional point of view, I believe that the defendants had a right to put on the ballot a type of term limit that would effectively prevent what we might call career politicians from holding the office that we're talking about here, and that's mayoral."

¶ 10    Meanwhile, on November 23, 2016, plaintiff filed a complaint and emergency motion in the circuit court of Cook County against defendants, seeking (1) a declaratory judgment that the portion of Calumet City's referendum preventing him from running for mayor due to his having served five consecutive four-year terms as alderman was unconstitutional and (2) a temporary restraining order and permanent injunction enjoining Calumet City from

implementing the results of the referendum and from taking any actions preventing him from running for mayor. Plaintiff argued that (1) the portion of the referendum asking the voters to decide whether to limit mayoral candidates to persons who have served fewer than four consecutive four-year terms as alderman violated article VII, section 6(f), of the state constitution (Ill. Const. 1970, art. VII, § 6(f)), was vague and ambiguous, and was not rationally related to a legitimate governmental function as required by the due process and equal protection clauses and (2) the entire referendum violated the free and equal clause of the state constitution (Ill. Const. 1970, art. III, § 3) by asking voters to decide two separate and distinct propositions, *i.e.*, whether to limit mayoral candidates to persons who had served fewer than four consecutive four-year terms as mayor *and* whether to limit mayoral candidates to persons who had served fewer than four consecutive four-year terms as alderman.

¶ 11 The parties filed cross-motions for summary judgment. The circuit court granted defendants' motion for summary judgment and denied plaintiff's motion, upholding the validity of Calumet City's referendum and resulting mayoral term limit.

¶ 12 The mayoral election was held without plaintiff's name on the ballot, the office was filled, and the results were certified.

¶ 13 Plaintiff now appeals the circuit court's grant of summary judgment in favor of defendants. Defendants Calumet City and Nyota Figgs have filed an appellee's brief; defendant David Orr has not filed a brief. We decide the merits of the appeal based on the record and briefs filed on appeal.

¶ 14 Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 13. "Although the filing of cross-motions for summary judgment does not necessarily establish the lack of an issue of material fact or obligate a court to render summary judgment, it does indicate that the parties agree that the case involves a question of law and that they invite the court to decide the issues based on the record." *Id.* We review *de novo* the circuit court's summary judgment determination. *Id.*

¶ 15 Initially, we note that, in this appeal, plaintiff requests this court to void the February 2017 Democratic primary election for mayor of Calumet City and the April 2017 general election for mayor and to order a special election with plaintiff on the ballot. Plaintiff has forfeited his request for the voiding of the primary and general election and the holding of a special election by failing to offer any argument or authority in his appellant's brief for how or why such a remedy is appropriate now that the election cycle has concluded, the results have been certified, and the office has been filled. The election contest is also now moot. See Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017); *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶¶ 32, 36 (the supreme court held that, on appeal, the candidate forfeited her request for a special election where she provided no argument or citation to authority as to the appropriateness of a special election after the normal election cycle had concluded and the office had been filled, and the court further held that the conclusion of the election cycle rendered the election contest moot).

¶ 16 However, plaintiff argues on appeal that even if the election contest is moot and his requests to void the primary and general election and to hold a special election are forfeited, we should still address his arguments regarding the constitutionality of the Calumet City

referendum, where he raised those arguments at trial and on appeal and where a finding of the referendum's unconstitutionality would enable him to run for mayor in the future.

¶ 17    We agree. As plaintiff's arguments regarding the constitutionality of the Calumet City referendum were raised in the circuit court and on appeal, they are not forfeited (Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017)). As a resolution of the constitutionality of the referendum would have a practical effect on the existing controversy regarding whether Calumet City may properly prevent him from running for mayor in the future, the mootness doctrine does not apply. See *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 677 (2008) ("Mootness occurs once the plaintiff has secured what he basically sought and a resolution of the issues could not have any practical effect on the existing controversy."). Therefore, we proceed to address plaintiff's arguments regarding the constitutionality of the Calumet City referendum.

¶ 18    First, plaintiff contends the circuit court erred in finding that the portion of the Calumet City referendum, approved by the voters, that limited mayoral candidates to persons who had served fewer than four consecutive four-year terms as alderman, was a constitutional exercise of the home rule municipality's power under article VII, section 6(f) to establish a mayoral term limit.

¶ 19    Article VII, section 6 provides for the "Powers of Home Rule Units," including the power to "regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). Section 6(f) states: "A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law." Ill. Const. 1970, art. VII, § 6(f). "The intent and purpose of the home rule provisions is to severely limit the judiciary's authority to preempt home rule powers through judicial interpretation of unexpressed legislative intent. [Citation.] Home rule powers should be construed liberally." *City of Oakbrook Terrace v. Suburban Bank & Trust Co.*, 364 Ill. App. 3d 506, 514 (2006).

¶ 20    The circuit court here found that Calumet City had the power under article VII, section 6(f) to place a referendum on the ballot, asking the voters whether to limit the mayoral office to persons who had served fewer than four consecutive four-year terms as alderman. In support of its finding, the circuit court cited *Johnson v. Ames*, 2016 IL 121563. In *Johnson*, the supreme court addressed the constitutionality of a referendum question that asked the Village of Broadview voters to decide whether to limit candidates for village president to those persons who had served fewer than two full terms in that office. *Id.* ¶ 10.

¶ 21    The supreme court held that the Broadview referendum question was constitutional as it would impose a "term limit restriction by changing the eligibility requirements for those candidates running for village president in elections beginning with the one slated for April 4, 2017," and "that is precisely the type of change authorized [by article VII, section 6(f)] for *** home rule units." *Id.* ¶ 19.

¶ 22    In the instant case, the circuit court determined that the Calumet City referendum similarly would change the eligibility requirements for the candidates running for mayor by imposing a term limit restriction and that such "term limit eligibility requirements are authorized" under article VII, section 6(f), according to *Johnson*.

¶ 23    Plaintiff contends that the circuit court erred in finding that the portion of the term limit approved by the voters in the Calumet City referendum barring long-serving aldermen from running for mayor was similar to the term limit found constitutional in *Johnson*. Plaintiff argues that a "term limit" is defined as "a legal restriction on the number of times a person may

be elected to and serve in a particular public office" (www.dictionary.com/browse/term-limit (last visited Dec. 4, 2017)). Plaintiff contends that Calumet City provided for a "true" term limit *only* in the portion of its referendum prohibiting a mayoral candidate from seeking another term as mayor where he had previously served at least four consecutive four-year terms in that same office, similar to the referendum upheld in *Johnson* that prohibited candidates for village president who had previously served two consecutive full terms in that same office. However, plaintiff contends that the other portion of the Calumet City referendum, which prohibits a mayoral candidate from seeking a term as mayor where he had previously served at least four consecutive four-year terms as alderman, does not establish a "true" term limit; rather, it is an outright prohibition banning a certain classification of people (aldermen who served at least four consecutive four-year terms) from ever serving as mayor, much like the nonresidents, debtors, and felons who are barred from holding municipal offices by statute.

¶ 24    Plaintiff contends that, in contrast to *Johnson*, the portion of the Calumet City referendum banning aldermen who had served at least four consecutive four-year terms from serving as mayor "was invalid because the new eligibility requirement it established—one that was not based on prior service in the particular office at issue—was a 'false term limit' and was therefore unconstitutional and unenforceable."

¶ 25    Plaintiff's argument is unavailing. The *Johnson* court was only asked to decide whether article VII, section 6(f), allowed a referendum prohibiting candidates for running for the office of village president where they had already served two consecutive four-year terms in that office, and the supreme court answered in the affirmative. *Johnson*, 2016 IL 121563. Unlike in the present case, the referendum in *Johnson* did not also prohibit candidates from running for the office of village president where they had already served two consecutive four-year terms in a *different* office, and thus the supreme court had no cause to consider whether such a term limit was constitutional. In the absence of a supreme court pronouncement on the issue, we turn to the plain language of the Illinois Constitution, which is the best guide to the document's interpretation. *Cincinnati Insurance Co. v. Chapman*, 181 Ill. 2d 65, 77 (1998).

¶ 26    Article VII, section 6(f), expressly empowers a home rule municipality to "provide for *** terms of office only as approved by referendum" (Ill. Const. 1970, art. VII, § 6(f)). "Term of office" is defined as the "period during which an elected officer or appointee may hold office, perform its functions, and enjoy its privileges and emoluments." Black's Law Dictionary (7th ed. 1999). The home rule municipality's power to provide for an officeholder's terms of office as approved by referendum under article VII, section 6(f) necessarily includes the power to limit the number of terms he may serve. *Johnson*, 2016 IL 121563, ¶ 19. However, article VII, section 6(f) does not state *how* the officeholder's terms are to be limited, *i.e.*, for purposes of this case, whether the officeholder's terms are to be limited based on his prior service in the same office or are also to be limited based on his prior service in a different office. Rather, article VII, section 6(f) leaves it to the home rule municipality (via a voter referendum) to so "provide." Ill. Const. 1970, art. VII, § 6(f). In the present case, then, it was for the home rule municipality, Calumet City, with the approval of its voters, to decide whether to limit the mayoral terms based on the candidate's prior service in that same office or also based on his prior service in the aldermanic office.

¶ 27    Here, the Calumet City voters approved by referendum a limitation on mayoral terms based on the candidate's prior service as mayor *or* as alderman. Construed liberally, such was a

proper use of the home rule municipality's power under article VII, section 6(f) to provide for the terms of the mayoral office as approved by referendum. We will not preempt Calumet City's exercise of the power granted to it by article VII, section 6(f). See *City of Oakbrook Terrace*, 364 Ill. App. 3d at 514 (the judiciary's authority to preempt home rule powers is severely limited by the home rule provisions of the Illinois Constitution).

¶ 28    Plaintiff contends the result of the referendum is to prevent him from ever running for mayor of Calumet City, as he has already served more than the requisite four consecutive four-year terms as alderman, and that such a result was never intended by article VII, section 6(f). In effect, plaintiff is arguing that he has an absolute right to run for mayor at least once, and that any abridgement of that right is unconstitutional. We disagree. The right to run for a statutorily created office is not absolute (*People v. Hofer*, 363 Ill. App. 3d 719, 722 (2006); *Coles v. Ryan*, 91 Ill. App. 3d 382, 385 (1980)) and is subject to article VII, section 6(f), which, as discussed, allows the home rule municipality to "chang[e] the eligibility requirements for those candidates running [for office]" by limiting an officerholder's term via a referendum approved by the voters. *Johnson*, 2016 IL 121563, ¶ 19. For the reasons discussed earlier, the referendum here approved by the voters comported with article VII, section 6(f), by changing the eligibility requirements for those candidates running for mayor of Calumet City and providing that such mayoral candidates may not have previously served four or more consecutive four-year terms as either mayor or alderman. As an alderman who had served five consecutive four-year terms, plaintiff did not meet the eligibility requirement to run for mayor and therefore he was properly removed from the February 2017 ballot. We find no constitutional violation.

¶ 29    Next, plaintiff contends he was denied substantive due process and equal protection by the portion of the Calumet City referendum approved by the voters, which limited mayoral candidates to those persons who had served fewer than four consecutive four-year terms as alderman and thereby prevented him from running for mayor. Both parties agree that as there is no fundamental right to run for office (*Hofer*, 363 Ill. App. 3d at 722; *Coles*, 91 Ill. App. 3d at 385), the rational basis test applies. Under the rational basis test, the mayoral term limit established by the referendum and approved by the voters will be upheld if the term limit bears a rational relationship to a legitimate governmental interest (*Walgreen Co. v. Illinois Liquor Control Comm'n*, 111 Ill. 2d 120, 124 (1986)). Under the rational basis test, the court may hypothesize reasons for the term limit established by the referendum, and if there is any conceivable basis for finding a rational relationship, the referendum will be upheld. See *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998); *Shachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 99.

¶ 30    In finding that the mayoral term limit established by the Calumet City referendum passed the rational basis test, the circuit court stated:

> "This court finds that the term limits are rationally related to the legitimate interest of providing more opportunity for people to hold government office by limiting ballot access to long-term office holders. The referendum is not arbitrary because it only prevents individuals who have served four [consecutive] terms as mayor or alderman from running for mayor. This court can take judicial notice of the Calumet City ordinances which provide that the city council of the City of Calumet City consists of the mayor and the aldermen. It is not irrational for the voters of Calumet City to limit the ability of long-standing aldermen and mayors to run for the office of mayor while

not limiting the ability of other elected officials, such as city clerk and city treasurer, who are not members of the city council."

¶ 31   We agree with the circuit court that there is a legitimate governmental interest in encouraging candidates for mayor who are not long-standing members of the city council and who may have new, different ideas for running the government. The term limit established by the referendum, limiting mayoral candidates to persons who have served fewer than four consecutive terms as mayor or as alderman, will provide more opportunities for such new candidates to run. Accordingly, the mayoral term limit established by the referendum passed the rational basis test.

¶ 32   Plaintiff argues, though, that there were better ways of accomplishing the governmental interest, such as by imposing mayoral term limits against *all* long-serving governmental officers, not just city council members, and/or also by imposing mayoral term limits against longtime aldermen whose prior terms of service were not consecutive.

¶ 33   However, the mayoral term limit approved by the Calumet City voters need not be the best means of accomplishing the governmental objective; as long as it is rationally related to a legitimate governmental interest, it will be upheld. *Cassidy*, 184 Ill. 2d at 124; *Shachter*, 2011 IL App (1st) 103582, ¶ 99. As discussed, the mayoral term limit bears a rational relationship to the legitimate governmental interest of encouraging residents, other than long-term politicians in the city council, to run for mayor. Accordingly, we find no substantive due process or equal protection violations.

¶ 34   Next, plaintiff contends the Calumet City referendum violates the free and equal clause of the Illinois Constitution.

¶ 35   The free and equal clause provides: "All elections shall be free and equal." Ill. Const. 1970, art. III, § 3. The court in *Clark v. Illinois State Board of Elections*, 2014 IL App (1st) 141937, explained the clause in the context of another term limit ballot initiative:

> "The free and equal clause guarantees the right to vote in Illinois and reflects a broad public policy to expand the opportunity to vote. [Citation.] Under the clause, every qualified voter has a right to vote and all votes must have equal influence. [Citation.] Further, the free and equal clause gives constitutional priority to the state's public policy of encouraging the full and effective participation of the entire electorate. [Citation.]
>
> The free and equal clause is violated when separate and unrelated questions are combined in a single proposition on a ballot. [Citation.] It has been said that such combining of separate and unrelated questions prevents a voter from giving a free and equal expression of preference as to each proposition. [Citations.] In the context of a ballot initiative, our supreme court has stated that separate questions may be combined in a single proposition as long as they are reasonably related to a common objective in a workable manner. [Citation.] An additional consideration is whether the questions are compatibly interrelated to provide a consistent and workable whole in the sense that reasonable voters can support the entire proposition." *Id.* ¶¶ 27-28.

¶ 36   Plaintiff argues that the Calumet City referendum violates the free and equal clause by improperly combining two separate questions that are not reasonably related to a common objective in a workable manner. Specifically, the voters were asked to decide (1) whether mayoral candidates should be limited to persons who have served fewer than four consecutive

four-year terms as mayor and (2) whether mayoral candidates should be limited to persons who have served fewer than four consecutive four-year terms as alderman. Plaintiff contends that because it is possible for voters to want to vote "yes" to the first question but "no" to the second question, the questions should have been submitted as separate resolutions.

¶ 37 In finding no violation of the free and equal clause, the circuit court stated:

"[T]he two questions presented in the referendum are clearly related to a common objective: establishing a term limit for the office of mayor. Whether reasonable people might prefer to vote 'Yes' for one portion of the referendum and 'No' for another portion is not the test for whether there is a violation of the free and equal clause. Since the questions are reasonably related in a workable manner, there is no violation of the free and equal clause."

¶ 38 We agree with the circuit court. As discussed, Calumet City had a legitimate interest in providing a term limit for the office of mayor so as to encourage persons who were not long-serving politicians in the city council to run for that office. The two questions presented in the referendum reasonably related to the common objective of providing such a term limit, and reasonable voters could (and did) support the entire proposition; as such, the referendum did not run afoul of the free and equal clause.

¶ 39 Next, plaintiff contends the Calumet City referendum is vague, ambiguous, and not self-executing because it is unclear as to whether a person's service as mayor or alderman prior to the referendum is to be considered in determining if that person has served four or more consecutive four-year terms in one or more of those positions. The Illinois Supreme Court has determined that any referendum initiated under article VII, section 6(f) must be able to stand on its own terms and may not be vague and ambiguous in regards to the information needed for its implementation and enforcement. *Leck v. Michaelson*, 111 Ill. 2d 523, 530-31 (1986).

¶ 40 There is no unconstitutional ambiguity here. The first clause of the Calumet City referendum presents voters with the question of whether the office of mayor of Calumet City on or after April 4, 2017, should be subject to new term limit requirements. The second clause defines those term limit requirements, limiting mayoral candidates to those persons who have served fewer than four consecutive four-year terms as mayor or as alderman. We conclude that the meaning of the referendum is sufficiently clear: a person's service as mayor or as alderman prior to the referendum is to be considered in determining if he has served four or more consecutive four-year terms in one or more of those positions. See also *Johnson*, 2016 IL 121563, ¶ 17 (holding that a similarly worded referendum was not vague or ambiguous).

¶ 41 In his reply brief, plaintiff argues that we should find the referendum's term limit ambiguous and void for preventing aldermen who had served four or more consecutive four-year terms from running for mayor. Plaintiff is essentially rearguing his claim that only a so-called "true" term limit, whereby a person may be prevented from holding an office when he has previously served terms in that same office, is constitutionally allowable. As discussed earlier in this opinion, though, article VII, section 6(f), contains no such distinctions between so-called "true" and "false" term limits, and instead allows the voters in the home rule municipality to decide for themselves, via a referendum, how to best limit an officeholder's term. We find no ambiguity in the Calumet City referendum that allowed voters to decide whether to limit mayoral candidates to those persons who had served fewer than four consecutive four-year terms as either mayor or as alderman.

¶ 42    Finally, plaintiff contends that the *ex post facto* clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 16) is violated by the portion of the Calumet City referendum preventing him from running for mayor based on his prior five consecutive four-year terms as alderman. Generally, the constitutional prohibition against *ex post facto* laws concerns only criminal matters and has no application to civil law. *Toia v. People*, 333 Ill. App. 3d 523, 528 (2002). Even applying the *ex post facto* clause here, we note that a law is *ex post facto* only when it is improperly retroactively applied (*People v. Scalise*, 2017 IL App (3d) 150299, ¶ 8). Here, the Calumet City referendum passed in November 2016 only provided term limits for candidates in future elections (starting in April 2017), and thus had no retroactive impact. See *Johnson*, 2016 IL 121563, ¶ 19 (holding that a referendum altering the eligibility requirements for candidates in future elections by providing for a term limit has no retroactive impact). Accordingly, plaintiff's *ex post facto* claim fails.

¶ 43    For the foregoing reasons, we affirm the circuit court.

¶ 44    Affirmed.