THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD KUNCE, Defendant-Appellant.

Third District   No. 3—89—0260

Opinion filed April 10, 1990.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

A jury convicted the defendant, Richard Kunce, of forgery on an accountability theory (Ill. Rev. Stat. 1987, ch. 38, pars. 17—3(a)(1), 5—2(c)). The trial court sentenced him to 30 months' probation and 16 days in the county jail. The defendant appeals, essentially contending that he innocently relied upon the advice of an attorney.

The record shows that on May 12, 1979, Carole Stevens' husband, Carl, died. Carole thereafter kept her husband's body in a bedroom, apparently believing despite numerous signs of death that he was merely in a coma. In May of 1980, the defendant first visited Carole's house and at that time saw her husband's body. The defendant thereafter visited on numerous occasions and in 1986 moved in with Carole. In January of 1988, the police removed Carl's body from the house.

Carole testified at the defendant's forgery trial that in 1984 a balloon payment on her mortgage came due. Her brother-in-law, attorney Roger Stevens, prepared Carl's power of attorney so Carole could refinance the house. Roger mailed the document to the defendant with directions for him to sign it as a witness to Carl's signature and then forward it to Carole. According to Carole, when she received the document in the mail, Roger and the defendant had already signed it. She then signed Carl's name on it and obtained his mother's signature as another witness. Carole thereafter used the power of attorney to execute a new note and mortgage on her house, signing those documents on behalf of Carl and herself. She testified that she did not intend to defraud the bank, but merely wanted to keep her house. Toward that end, she claimed she relied entirely on Roger's advice as a lawyer. She also noted that Roger had supported her after Carl died.

Detective Stephen Earl Johnson of the Knox County sheriff's department testified that in June of 1979 Roger Stevens had contacted his department and indicated that any attempts at entry into Carole's house or interference with her family would result in a harassment suit against the department.

Sergeant Dick Flanagan of the Illinois State Police testified that the defendant told him he had signed the power of attorney immedi-

ately after Carole signed Carl's name on it.

The defendant testified that he had known Roger Stevens since 1978. Roger had informed him that they were going to use the power of attorney to refinance Carole's house. Pursuant to Roger's mailed instructions, the defendant had signed the power of attorney as a witness and then forwarded it to Carole. He admitted knowing about Carl's condition when he signed the power of attorney. The defendant further testified that he had incorrectly told the police that he signed the power of attorney after Carole signed it. When he made the statement, he was disoriented because he had not had anything to eat or drink for three days. The defendant noted that his only intention in signing the power of attorney was to help Carole refinance the house.

The record contains the handwritten instructions from Roger to the defendant and Carole regarding execution of the power of attorney. Roger instructed the defendant to sign as a witness to Carl's signature, then forward the document to Carole. He instructed Carole to have Carl sign the power of attorney on each page. Later in the instructions to Carole, Roger told her that the bank would require her to sign a document stating that Carl had not revoked the power of attorney and that he was still alive. Roger noted that this was just a formality, but also told her not to volunteer the affidavit unless the bank requested it.

Other evidence showed that Roger Stevens had been in Carole's house after Carl died. It was not clear, however, whether he saw Carl's body.

On appeal, the defendant argues that the State failed to prove that he had the requisite intent to defraud or facilitate an offense. He claims that he relied on the directions of a lawyer in signing the power of attorney and did not know that either he or Carole could be defrauding the bank.

■■ ■ A person commits forgery when, with intent to defraud, he knowingly makes or alters any document capable of defrauding another in such manner that it purports to have been made by another or by authority of one who did not give such authority. (Ill. Rev. Stat. 1987, ch. 38, par. 17—3(a)(1).) "Intent to defraud" means an intention to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property. (Ill. Rev. Stat. 1987, ch. 38, par. 17—3(b).) A person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. Ill.

Rev. Stat. 1987, ch. 38, par. 5—2(c).

■■ ■ Guilt for forgery under an accountability theory can be shown by circumstantial evidence. (*People v. Passantino* (1979), 67 Ill. App. 3d 469, 385 N.E.2d 141.) Intent to defraud may be inferred from the facts and circumstances surrounding the transaction. (*People v. Bailey* (1958), 15 Ill. 2d 18, 153 N.E.2d 584.) When a reviewing court is presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ This is a case where reviewing the evidence "in the light most favorable to the prosecution" takes on special significance. All of the evidence regarding Roger's knowledge and the defendant's intent is open to interpretation. We find, however, that under the instant facts a rational trier of fact could conclude that Roger did not know that Carl was dead when he helped Carole prepare the power of attorney. Moreover, the jury could also conclude that the defendant actively and knowingly participated in the scheme to defraud the bank by witnessing Carl's signature when he knew that Carl could not sign the document and knew that it was going to be used to deceive the bank. Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant knew of the fraudulent nature of the document and was not innocently relying upon an attorney's assurance that it was legal to refinance a house in this manner.

Accordingly, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.